Alan P. Block
California Bar No. 143783
ablock@mckoolsmith.com
**MCKOOL SMITH P.C.**
One California Plaza, Suite 2900
Los Angeles, CA 90071
Telephone: 213.694.1200
Facsimile: 213.694.1234

*(additional counsel listed on next page)*

**Attorneys for Defendant
NOVACLOUD LICENSING, LLC**

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION**

| | |
|---|---|
| SAP AMERICA, INC. | CASE NO. 3:25-cv-08118-JD |
| *Plaintiff*, | **NOVACLOUD LICENSING LLC'S NOTICE OF MOTION AND MOTION TO DISMISS SAP AMERICA, INC.'S COMPLAINT FOR DECLARATORY JUDGMENT** |
| v. | |
| NOVACLOUD LICENSING, LLC | |
| *Defendant*. | Hearing Date: January 15, 2026 |
| | Hearing Time: 10:00 a.m. |
| | Judge: Hon. James Donato |
| | Courtroom: 11, 19th Floor |

McKOOL SMITH, P.C.

Defendant's Notice of Motion and Motion to Dismiss                    Case No. 3:25-cv-08118-JD

Clara Bourget
California Bar No. 356949
cbourget@McKoolSmith.com
**MCKOOL SMITH, P.C.**
300 South Grand Avenue, Suite 2900
Los Angeles, CA 90071
Telephone: (213) 694-1200
Facsimile: (213) 694-1234

John B. Campbell (*admitted pro hac vice*)
Texas State Bar No. 24036314
jcampbell@McKoolSmith.com
Stone A. Martin (*admitted pro hac vice*)
Texas State Bar No. 24143713
smartin@McKoolSmith.com
**MCKOOL SMITH, P.C.**
303 Colorado Street Suite 2100
Austin, TX 78701
Telephone: (512) 692-8700
Facsimile: (512) 692-8744

Kevin L. Burgess (*admitted pro hac vice*)
Texas State Bar No. 24006927
kburgess@McKoolSmith.com
**MCKOOL SMITH, P.C.**
104 East Houston Street, Suite 300
Marshall, TX 75670
Telephone: (903) 923-9002
Facsimile: (903) 923-9099

Michael E. Catapano (*admitted pro hac vice*)
New York State Bar No. 5933700
mcatapano@mckoolsmith.com
**MCKOOL SMITH, P.C.**
1301 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (212) 402-9400
Facsimile: (212) 402-9444

**Attorneys for Defendant
NOVACLOUD LICENSING, LLC**

McKool Smith, P.C.

## **TABLE OF CONTENTS**

I.    INTRODUCTION ...................................................................................................2

II.   FACTUAL BACKGROUND.................................................................................4

III.  LEGAL STANDARD............................................................................................5

IV.   ARGUMENT .........................................................................................................6

   A.    This Court Lacks Subject Matter Jurisdiction Over This Case..........................6

         1.    There is No Actual Controversy Because NovaCloud's Communications Merely Identify Its Patent Portfolio and SAP's Product Line........................................................................................6

         2.    NovaCloud Did Not Communicate the Requisite Intent to Enforce Its Patents Against SAP ...............................................................7

         3.    NovaCloud's Litigation Against Unrelated Parties Does Not Suggest an Intent to Enforce Its Patents Against SAP ...........................................11

   B.    SAP's Jurisdictional Claim is Belied By Its Arbitrary Selection of Twenty-One Patents From NovaCloud's Portfolio...............................................................12

   C.    Routine Licensing Efforts Promote Judicial Efficiency ...................................14

V.    CONCLUSION....................................................................................................15

MᴄKᴏᴏʟ Sᴍɪᴛʜ, P.C.

Defendant's Notice of Motion and Motion to Dismiss                    Case No. 3:25-cv-08118-JD

**TABLE OF AUTHORITIES**

**Page**

CASES

*3M Co. v. Avery Dennison Corp.*,
673 F.3d 1372 (Fed. Cir. 2012)..................................................................................6, 7

*AIDS Healthcare Found., Inc. v. Gilead Scis., Inc.*,
890 F.3d 986 (Fed. Cir. 2018)..................................................................................5, 10

*Allied Mineral Prods., Inc. v. Osmi, Inc.*,
870 F.3d 1337 (Fed. Cir. 2017)................................................................................5, 12

*Applera Corp. v. Mich. Diagnostics LLC*,
594 F. Supp. 2d 150 (D. Mass. 2009) ..........................................................................13

*Benitec Austl., Ltd. v. Nucleonics, Inc.*,
495 F.3d 1340 (Fed. Cir. 2007)........................................................................................5

*Cepheid v. Roche Molecular Sys., Inc.*,
No. C–12–4411 EMC, 2013 WL 184125 (N.D. Cal. Jan. 17, 2013)...............3, 8, 9, 10, 15

*Comm'ns Test Design, Inc. v. Contec LLC*,
952 F.3d 1356 (Fed. Cir. 2020)......................................................................................14

*Dental Monitoring SAS v. Align Tech., Inc.*,
No. C 22-07335 WHA, 2023 WL 4297570 (N.D. Cal. Jun. 30, 2023) ............................13

*Finisar Corp. v. Capella Photonics, Inc.*,
No. 20-cv-07629-EMC, 2021 WL 810227 (N.D. Cal. Mar. 3, 2021) .................6, 7, 11, 12

*Hewlett-Packard Co. v. Acceleron LLC*,
587 F.3d 1358 (Fed. Cir. 2009)..................................................................................7, 10

*Innovative Therapies, Inc. v. Kinetic Concepts, Inc.*,
599 F.3d 1377 (Fed. Cir. 2010)................................................................................11, 15

*Kannuu Pty. Ltd v. Samsung Elecs. Co. Ltd*,
15 F.4th 1101 (Fed. Cir. 2021) .....................................................................................14

*MedImmune, Inc. v. Genentech, Inc.*,
549 U.S. 118 (2007)..................................................................................................4, 5

*Microsoft Corp. v. Phoenix Sols. Inc.*,
741 F. Supp. 2d 1156 (C.D. Cal. 2010) ........................................................................13

*Prasco LLC v. Medicis Pharm. Corp.*,
537 F.3d 1329 (Fed. Cir. 2008)......................................................................3, 11, 12, 15

-ii-

McKOOL SMITH, P.C.

*Proofpoint, Inc. v. InNova Patent Licensing LLC*,
No. 5:11–CV–02288-LHK, 2011 WL 4915847 (N.D. Cal. Oct. 17, 2011) ........................5

*Red Hat, Inc. v. VirtaMove Corp.*,
785 F. Supp. 3d 603 (N.D. Cal. 2025) ......................................................5, 7, 12

*Red Hat, Inc. v. VirtaMove Corp*,
No. 5:24-cv-04740 (N.D. Cal. Aug. 5, 2024) ...................................................12

*SanDisk Corp. v. STMicroelectronics, Inc.*,
480 F.3d 1372 (Fed. Cir. 2007)...............................................................9, 10

*SiOnyx LLC v. Hamamatsu Photonics K.K.*,
981 F.3d 1339 (Fed. Cir. 2020)..................................................................14

*Unisense Fertilitech A/S v. Auxogyn, Inc.*,
896 F. Supp. 2d 822 (N.D. Cal. 2012) ..........................................................6

**STATUTES**

28 U.S.C. § 2201 ..................................................................1, 5, 14, 15

**OTHER AUTHORITIES**

Fed. R. Civ. P. 12(b)(1).............................................................................1

Jorge L. Contreras, *Confidentiality and Pre-license Negotiations. In: Intellectual Property Licensing and Transactions: Theory and Practice,* CAMBRIDGE UNIV. PRESS (2022)......14

McKool Smith, P.C.

-iii-

### NOTICE OF MOTION AND MOTION

TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on January 15, 2026, at 10:00 a.m., or as soon thereafter as it may be heard, in the Courtroom of the Honorable James Donato, San Francisco Courthouse, Courtroom 11, 19th Floor, 450 Golden Gate Avenue, San Francisco, CA 94102, Defendant NovaCloud Licensing LLC ("NovaCloud") respectfully moves under Fed. R. Civ. P. 12(b)(1) for an order dismissing the complaint filed by Plaintiff SAP America, Inc. ("SAP") on September 24, 2025, for lack of subject matter jurisdiction pursuant to 28 U.S.C. § 2201(a) (requiring a "case of actual controversy"). This Motion is based on this Notice of Motion; the Memorandum of Points and Authorities submitted herewith; the argument of counsel; and such other matters as the Court may consider.

### STATEMENT OF RELIEF SOUGHT

NovaCloud seeks dismissal, without leave to amend, of SAP's complaint for claims seeking a declaratory judgment of non-infringement because no real or immediate controversy exists for this declaratory judgment action.

### ISSUE TO BE DECIDED

Whether Declaratory Judgment jurisdiction, pursuant to 28 U.S.C. § 2201(a) (requiring a "case of actual controversy"), exists, and should be exercised in this Court's wide discretion under the Declaratory Judgment Act, with respect to 21 patents unilaterally selected by SAP from NovaCloud's larger patent portfolio, where NovaCloud merely asked SAP to engage in good faith licensing discussions via communications which (1) referenced NovaCloud's U.S. patent portfolio as a whole, without identifying or "asserting" any particular patent(s) or accusing any particular SAP product(s) of infringement of any particular patents, and (2) generally stated NovaCloud's

McKool Smith, P.C.

-1-

Defendant's Notice of Motion and Motion to Dismiss    Case No. 3:25-cv-08118-JD

belief that many of the patents are "relevant" to SAP's cloud computing and Business Technology Platform services.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    INTRODUCTION**

NovaCloud communicated with SAP in a good faith attempt to initiate licensing discussions in relation to NovaCloud's patent portfolio, which relates generally to (i.e., is generally "relevant to") cloud services and data center infrastructure services. In those communications, NovaCloud generally referenced its entire U.S. patent portfolio and generally referred to SAP's products, but:

- did not identify (and certainly did not "assert") any particular patents;

- did not accuse any particular SAP product or service of infringement of any particular patent(s);

- did not threaten litigation or convey any intent to enforce the portfolio (or any patent or subset of the patents) against SAP; and

- did not include any basis for SAP's unilateral cherry-picking of 21 of NovaCloud's 57 U.S. patents or SAP's conclusory assertion that it was somehow "accused" of infringing all (or any) of these allegedly "asserted" 21 patents.

SAP has not and cannot point to anything suggesting NovaCloud demonstrated the requisite intent to enforce any of its patents—let alone any or all of the 21 patents SAP has mysteriously chosen to put into issue here—against SAP such that declaratory judgment jurisdiction would be appropriate. There is simply no "actual case or controversy" and no actual or threatened "injury-in-fact" to SAP that would justify the exercise of declaratory judgment jurisdiction under the facts alleged in SAP's complaint.

On the contrary, even if this case were a close call (which it is not), exercise of jurisdiction under these facts (1) would waste judicial time and resources by forcing unnecessary litigation over

-2-

Defendant's Notice of Motion and Motion to Dismiss                                    Case No. 3:25-cv-08118-JD

McKOOL SMITH, P.C.

infringement and validity of TWENTY-ONE separate patents that NovaCloud has never claimed that SAP has infringed or is infringing, and (2) would have serious policy and practical implications by disincentivizing any form of good faith licensing discussions by patent owners, discouraging non-litigation, business-driven licensing efforts, and effectively forcing patent owners to sue rather than attempt any kind of business discussion—even discussions intended to simply explore whether a license might be needed or desired by the potential licensee—lest they be hauled into court for merely "suggesting" that a broad patent portfolio is "relevant" to a particular party's business and asking that party to engage in a good faith discussion.

The Federal Circuit and courts in this District have repeatedly held non-accusatory licensing communications insufficient to establish jurisdiction in declaratory judgment actions. A justiciable controversy does not arise where a defendant has not accused a plaintiff of infringement or asserted any rights against the plaintiff's product, or taken any actions which would imply such claims. *Prasco LLC v. Medicis Pharm. Corp.,* 537 F.3d 1329, 1340-41 (Fed. Cir. 2008). Even when a defendant had previous communications with plaintiff that identified a specific patent at issue, this Division found such communications to be insufficient to create a justiciable controversy. *Cepheid v. Roche Molecular Sys., Inc.,* No. C–12–4411 EMC, 2013 WL 184125, *6 (N.D. Cal. Jan. 17, 2013). As those decisions make clear, a plaintiff's unilateral apprehension of suit—especially when fueled only by good faith attempts to initiate a portfolio licensing discussion—does not create a justiciable controversy. *Prasco LLC,* 537 F.3d at 1338.

Crucially, SAP does not allege that NovaCloud took concrete, adverse steps signaling an intent to enforce its patents against SAP. There are no allegations of infringement, no identification or discussion of any particular patents (much less the specific 21 patents that SAP unilaterally calls the "Asserted Patents" here), no claim charts, no infringement analyses, no threats of litigation, no deadlines for response, and no prior litigation between the parties. Absent any such acts

-3-

demonstrating an intent to enforce its patents against SAP, SAP's theory depends on a "hypothetical state of facts"—an alternate reality premised, at best, on a subjective *mis*apprehension and unfounded belief by SAP that NovaCloud was targeting SAP with affirmative, accusatory conduct. What the *facts*, even as alleged by SAP, objectively reflect in this case is that NovaCloud did nothing more than reference the general applicability (i.e., "relevance") of its portfolio as a whole to cloud services and data center infrastructures, and invite SAP to engage in a good faith discussion of whether a license might be appropriate or desirable to SAP. These facts cannot sustain Article III jurisdiction. *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007).

## II.    FACTUAL BACKGROUND

On September 24, 2025, SAP filed the present action seeking a declaration by the Court that twenty-one NovaCloud patents[1] are not infringed by SAP. *See* Compl. ¶¶1, 4. SAP's action arises from introductory communications, as opposed to accusations, between NovaCloud and SAP regarding NovaCloud's patent licensing program. In March 2025, NovaCloud contacted SAP to discuss a potential license to a portfolio of patents. Compl. Ex. V. NovaCloud generically referenced its *entire* U.S. portfolio of 57 patents and stated that many of the patents were "relevant" to SAP's "cloud computing and Business Technology Platform services." *Id.*; *see also* Compl. ¶6. NovaCloud's outreach went unanswered for months, but NovaCloud neither imposed a deadline nor pressed SAP for a response. Compl. Exs. V, W.

In August 2025, NovaCloud shared additional information about the portfolio and proposed licensing terms. Compl. ¶12. NovaCloud suggested that the parties enter into a non-disclosure

---

[1] U.S. Patent Nos. 7,860,948 ("the '948 patent"), 7,948,994 ("the '994 patent"), 8,015,291 ("the '291 patent"), 8,145,721 ("the '721 patent"), 8,401,028 ("the '028 patent"), 8,407,348 ("the '348 patent"), 8,606,738 ("the '738 patent"), 9,201,747 ("the '747 patent"), 9,225,651 ("the '651 patent"), 9,491,063 ("the '063 patent"), 9,654,333 ("the '333 patent"), 9,807,159 ("the '159 patent"), 9,847,903 ("the '903 patent"), 9,900,262 ("the '262 patent"), 9,912,582 ("the '582 patent"), 10,225,173 ("the '173 patent"), 10,237,145 ("the '145 patent"), 10,353,730 ("the '730 patent"), 10,430,172 ("the '172 patent"), 10,691,480 ("the '480 patent"), and 11,748,132 ("the '132 patent"), (collectively, the "Asserted Patents")*; see* Compl. Exs. A-U.

-4-

agreement ("NDA") and provided a draft NDA. Compl. ¶13. SAP declined to enter the NDA and instead—without receiving any accusation of infringement from NovaCloud—filed its complaint for declaratory judgment of non-infringement. Compl. ¶¶12-14.

## III.   LEGAL STANDARD

Under the Declaratory Judgment Act, 28 U.S.C. § 2201(a), establishing subject matter jurisdiction requires an actual controversy between the parties that is of "sufficient immediacy and reality." *MedImmune, Inc.*, 549 U.S. at 127 (internal quotations omitted); *AIDS Healthcare Found., Inc. v. Gilead Scis., Inc.*, 890 F.3d 986, 990 (Fed. Cir. 2018); 28 U.S.C. § 2201. "The burden is on the party claiming declaratory judgment jurisdiction to establish that such jurisdiction existed at the time the claim for declaratory relief was filed and that it has continued since." *Benitec Austl., Ltd. v. Nucleonics, Inc.*, 495 F.3d 1340, 1344 (Fed. Cir. 2007); *see also AIDS Healthcare Found., Inc.*, 890 F.3d at 990.

To establish whether an actual controversy is present based on enforcement activity by a patent owner, "the pleadings must show that the patentee engaged in affirmative acts directed specifically at the party seeking declaratory judgment." *Proofpoint, Inc. v. InNova Patent Licensing LLC*, No. 5:11–CV–02288, 2011 WL 4915847, *3 (N.D. Cal. Oct. 17, 2011) (emphasis added); *Allied Mineral Prods., Inc. v. Osmi, Inc.,* 870 F.3d 1337, 1339 (Fed. Cir. 2017) ("Declaratory judgment jurisdiction requires some affirmative act by the patentee."). "An affirmative act by the patentee is conduct that can be reasonably inferred as demonstrating intent to enforce a patent." *Red Hat, Inc. v. VirtaMove Corp.*, 785 F. Supp. 3d 603, 608 (N.D. Cal. 2025) (internal quotations omitted); *AIDS Healthcare Found., Inc.*, 890 F.3d at 994 (without an affirmative act by the patentee to assert patent rights, there can be no justiciable controversy).

Defendant's Notice of Motion and Motion to Dismiss                    Case No. 3:25-cv-08118-JD

## IV.    ARGUMENT

### A.    This Court Lacks Subject Matter Jurisdiction Over This Case

SAP's complaint does not establish subject matter jurisdiction for the purposes of a declaratory judgment action. The totality of the facts and circumstances SAP alleges, even if taken as true, do not establish an actual controversy as a matter of law.

#### 1.    There is No Actual Controversy Because NovaCloud's Communications Merely Identify Its Patent Portfolio and SAP's Product Line

NovaCloud's communications with SAP do not reflect an actual controversy. "To establish the existence of a definite and concrete dispute, more is required than a communication from a patent owner to another party, merely identifying its patent and the other party's product line." *3M Co. v. Avery Dennison Corp.*, 673 F.3d 1372, 1378-79 (Fed. Cir. 2012) (internal quotations omitted); *Finisar Corp. v. Capella Photonics, Inc.*, No. 20-cv-07629-EMC, 2021 WL 810227, at *4 (N.D. Cal. Mar. 3, 2021) ("An affirmative act requires more than a communication from a patent owner to another party, merely identifying its patent and the other party's product line.") (internal quotations omitted).

NovaCloud first sent communications to SAP in March 2025 to discuss a potential business relationship with SAP. Compl. Exs. V, W. In those letters (and, indeed, in all future communications), NovaCloud did not identify any specific patents, nor did NovaCloud accuse any particular SAP product or service of infringing any specific patent or patents (much less any or all of the 21 patents that SAP has unilaterally selected for inclusion in this case). Rather, NovaCloud merely referenced its ownership of 57 U.S. patents within its portfolio and suggested that the patents are "relevant" to SAP's product offerings. Compl. Exs. V, W; *Unisense Fertilitech A/S v. Auxogyn, Inc.,* 896 F. Supp. 2d 822, 830 (N.D. Cal. 2012) (finding that although the patent owner identified which specific patent would be of interest to the plaintiff, jurisdiction did not exist because the patent owner never identified specific products that would infringe its patent). NovaCloud reached

Defendant's Notice of Motion and Motion to Dismiss                    Case No. 3:25-cv-08118-JD

McKool Smith, P.C.

out to SAP to inform SAP that NovaCloud's patent portfolio was relevant to SAP's cloud computing platform and services in the hope of beginning good faith licensing discussions. Compl. Exs. V, W.

As SAP well knows, patent owners often seek to license broad patent portfolios not just to companies whom the patent owner believes are actually and presently infringing, but also, as is the case here, to companies to whom the subject matter of the portfolio may be "relevant," even in the absence of any belief that the prospective licensee has infringed or is infringing (e.g., a license may be of interest merely to provide freedom to operate, to avoid the burden and expense of evaluating whether or not infringement exists, and/or to provide forward-looking access to the patented inventions in the portfolio as the prospective licensee continues to improve on, modify and expand its products and technology). Simply put, NovaCloud's communications "merely" referenced its entire U.S. portfolio of patents and noted the "relevance" of the portfolio as a whole to SAP's businesses generally. Such conduct does not give rise to an actual controversy. *3M Co.,* 673 F.3d at 1379.

**2.    NovaCloud Did Not Communicate the Requisite Intent to Enforce Its Patents Against SAP**

The totality of circumstances shows that NovaCloud did not communicate an intent to enforce its patents against SAP. As previously mentioned, "[a]n affirmative act requires more than a communication from a patent owner to another party, merely identifying its patent and the other party's product line," *Finisar Corp.*, 2021 WL 810227 at *4, but "how much more is evaluated on a case-by-case basis analysis." *3M Co.,* 673 F.3d at 1378. Courts also consider a party's external conduct in determining whether it constitutes an affirmative act by the patent owner demonstrating an "intent to enforce its patents" against the declaratory plaintiff. *Red Hat, Inc.*, 785 F. Supp. 3d at 613; *Hewlett-Packard Co. v. Acceleron LLC*, 587 F.3d 1358, 1364 (Fed. Cir. 2009) ("Indeed, it is the objective words and actions of the patentee that are controlling…Thus, conduct that can be

-7-

reasonably inferred as demonstrating intent to enforce a patent can create declaratory judgment jurisdiction.") (internal quotations omitted).

In looking at affirmative acts and related external conduct, the Federal Circuit applies the "all circumstances" test. In doing so, a number of factors are considered, including: (1) "the depth and extent of infringement analysis conducted by the patent holder;" (2) "the strength of any threatening language in communications between the parties;" (3) "whether the patent holder imposed a deadline to respond;" (4) "any prior litigation between the parties;" and (5) " the patent holder's history of enforcing the patent-in-suit," to name a few. *Cepheid*, 2013 WL 184125 at *6 (citing multiple Federal Circuit cases).

Courts in this District have applied these factors to comparable fact patterns to find no subject matter jurisdiction. For instance, in *Cepheid*, the defendant sent three letters to the plaintiff. 2013 WL 184125 at *3-4. The first two letters, which "would not be sufficient to show a justiciable controversy," contained information regarding prior licensing agreements. In the third letter (the "November 2010 letter"), the defendant stated that the current license agreement did not contain a specific patent (*i.e.,* the '155 patent), "which [defendant] believed [was] necessary for certain of [plaintiff's] products." *Cepheid,* 2013 WL 184125 at *4. In analyzing these communications, the court declined to exercise jurisdiction over the plaintiff's declaratory judgment claim:

> The November 2010 letter, while it identified the '155 patent specifically and stated that Defendants believed a license was "necessary" for some of Plaintiff's products, did not identify the allegedly infringing products. Defendants provided no claims charts, and did not indicate that they had performed a detailed infringement analysis. The letter made no explicit allegations of infringement, and communicated no threat of legal action. Defendants initiated no follow up attempts to enforce their rights under the '155 patent against Plaintiff, even in the midst of heated litigation on the '375 patent…[G]iven the relatively ambiguous nature of the November 2010 letter, there was no initial controversy made manifest by a patentee's affirmative assertion of its patent rights.

*Id.* at *11-13. (internal quotations omitted).

-8-

Defendant's Notice of Motion and Motion to Dismiss                    Case No. 3:25-cv-08118-JD

McKOOL SMITH, P.C.

Under the Federal Circuit's "all the circumstances" test, NovaCloud's conduct—which is less accusatory than the communications in *Cepheid*—does not amount to an "affirmative assertion of patent rights" sufficient to establish subject matter jurisdiction. *Id.* Even more clearly than the *Cepheid* communications, NovaCloud's communications with SAP do not reflect an intent to enforce its patents. On the contrary, NovaCloud's non-accusatory communications broadly identified its patent portfolio and SAP's general areas of business, in hope of entering good faith licensing discussions. Compl. Exs. V, W.

Unlike Cepheid, who affirmatively told Roche that a patent license was necessary, NovaCloud merely stated that its patents were relevant to SAP's technology. *Cepheid,* 2013 WL 184125 at *10; Compl. Ex. V. NovaCloud did not accuse SAP products of infringing specific NovaCloud patents. Cepheid identified a specific patent for which a license was needed, but NovaCloud merely referenced its portfolio generally, without identifying any specific patents or even asserting that a license from SAP was "necessary." *Cepheid,* 2013 WL 184125 at *10; Compl. Exs. V, W. As in *Cepheid*, NovaCloud did not provide claim charts or identify any specific NovaCloud patents or any specific infringing SAP products. 2013 WL 184125 at *11. NovaCloud instead sought to enter an NDA with SAP prior to having licensing discussions.[2] Compl. ¶¶13-14.

_____

[2] SAP points to NovaCloud's statement that the "intent of the [proposed] NDA is to prevent SAP from filing a declaratory judgment action with respect to the patents[,]" (Compl. ¶ 14) as if to suggest that this is somehow an "improper" purpose for an NDA. In fact, the Federal Circuit has noted that such an NDA, with precisely this purpose, is the *appropriate* mechanism for precluding unnecessary declaratory judgment actions in favor of good faith licensing discussions. *See SanDisk Corp. v. STMicroelectronics, Inc*., 480 F.3d 1372, 1375, n. 1 (Fed. Cir. 2007) ("To avoid the risk of a declaratory judgment action, ST could have sought SanDisk's agreement to the terms of a suitable confidentiality agreement."). Moreover, the protections in the proposed NDA here ran both ways— also precluding NovaCloud from using the discussions as a basis for asserting that SAP was on "notice" of any patents such that damages could begin to accrue—which belies SAP's suggestion that NovaCloud's outreach created a "cloud of liability" constituting the requisite harm or threat of harm that might justify application of the Declaratory Judgment Act.

-9-

Like the correspondence in *Cepheid*, NovaCloud's communications contained no response deadlines and no threat of litigation. 2013 WL 184125 at *11; Exs. V, W. SAP identifies no language suggesting intimidation or immediacy, and NovaCloud did not impose any deadlines even after SAP failed to respond for approximately two months. Exs. V, W; *cf. Hewlett-Packard Co.*, 587 F.3d at 1361 (finding that jurisdiction for declaratory judgment was present where the plaintiff, in part, imposed repeated 2-week deadlines to respond to licensing communications). If NovaCloud wanted to sue SAP, it could have done so within the two months during which it received no response from SAP. *AIDS Healthcare Foundation, Inc.*, 890 F.3d at 991 ("[T]he time consumed by litigation of a speculative future controversy does not provide the 'immediacy and reality' required for declaratory judgment actions."). NovaCloud simply sought to begin good faith licensing discussions—not to intimidate SAP into court. And, unlike Cepheid and Roche, who had a history of litigation, there is no prior litigation between NovaCloud and SAP. *Cepheid,* 2013 WL 184125 at *11.

NovaCloud informed SAP that once the NDA was finalized, it would provide claim charts to SAP (Compl. ¶13), the entire purpose of which would be to engage in good faith discussions on the legal and technical merits as to *whether **or not*** SAP might require a license to any patents for its products (or might desire a license even in the absence of present infringement, simply to access the patented inventions in the future). SAP refused to sign the NDA and instead filed this declaratory judgment action, without ever having received any infringement allegations from NovaCloud, let alone claim charts or even patent-specific accusations against any specific SAP products. *Cf. SanDisk Corp. v. STMicroelectronics, Inc.*, 480 F.3d 1372, 1382 (Fed. Cir. 2007) (jurisdiction for declaratory judgment existed where the patent owner presented, as part of licensing negotiations, a thorough infringement analysis "which identified, on an element-by-element basis, the manner in which [the patent owner] believed each of [the plaintiff's] products infringed the specific claims of each of [the patent owner's] patents."). As SAP acknowledges in its complaint, it was NovaCloud

who was threatened with litigation, not the other way around. Compl. ¶14. Without an NDA in place, NovaCloud was worried about SAP filing a declaratory judgment action, which is exactly what SAP did. *Id.*; *see* Compl.

### 3.       NovaCloud's Litigation Against Unrelated Parties Does Not Suggest an Intent to Enforce Its Patents Against SAP

SAP's complaint references NovaCloud's enforcement activity involving other companies. Compl. ¶¶15-17. Referencing litigation against other companies does not change the analysis; the Federal Circuit has stated that enforcement against third parties, without a direct accusation of infringement against the declaratory judgment plaintiff, does not establish an actual controversy. For example, in *Innovative Therapies, Inc. v. Kinetic Concepts, Inc.*, the plaintiff sought a declaratory judgment for non-infringement against the defendant because of informal phone calls between the parties and the defendant's history of litigation against others, even though the defendant had made "no accusation of infringement or threat of suit" against the plaintiff. 599 F.3d 1377, 1380-82 (Fed. Cir. 2010). The court concluded that "the fact that [the declaratory judgment defendant] had filed infringement suits against other parties for other products does not, in the absence of any act directed toward [the declaratory judgment plaintiff], meet the minimum standard" for declaratory judgment standing. *Id.*; *see also Prasco LLC*, 537 F.3d at 1341. ("Prior litigious conduct is one circumstance to be considered in assessing whether the totality of circumstances creates an actual controversy.").

Courts in this District have followed suit. In *Finisar Corp.*, Finisar alleged that Capella brought multiple suits on the same patents for which Finisar sought relief and that those suits gave rise "to an actual controversy as to whether Finisar might be liable for direct infringement." *Finisar Corp.*, 2021 WL 810227 at *4. This District rejected that argument because there was "no communication from [the defendant] indicating an intent to enforce the patents against [the

-11-

Defendant's Notice of Motion and Motion to Dismiss                    Case No. 3:25-cv-08118-JD

plaintiff]…Thus, Finisar has not demonstrated a live case or controversy exists." *Id.* at \*5 (internal quotations omitted).

Similarly, in *Red Hat, Inc. v. VirtaMove Corp.,* Red Hat argued that "VirtaMove's infringement contentions against [other entities] could have just as easily been levied against [Red Hat's product]." Compl. *Red Hat, Inc. v. VirtaMove Corp.*, No. 5:24-cv-04740, D.I. 1 (N.D. Cal. Aug. 5, 2024). In granting defendant's motion to dismiss, the court explained:

> It may well be that the theory being pursued by VirtaMove in its lawsuits against IBM, Hewlett Packard Enterprise, Google, and Amazon could also be pursued against Red Hat. But VirtaMove has not yet initiated infringement litigation against Red Hat or made any other affirmative acts directed at Red Hat or its products suggesting it will enforce its patents against Red Hat…Regardless, in an action seeking a declaratory judgment of noninfringement, the Federal Circuit requires that a declaratory judgment defendant have engaged in some form of affirmative conduct directed toward the declaratory judgment plaintiff or its products evincing an intent to enforce its patent against the plaintiff or its products before a court can find an Article III case or controversy.

*Red Hat, Inc. v. VirtaMove Corp.*, 785 F. Supp. 3d 603, 610 (N.D. Cal. 2025).

SAP now finds itself in the same position, and its reliance on NovaCloud's actions against other entities is misplaced. The fact that NovaCloud has filed lawsuits against unrelated parties accusing different products and services (Compl. ¶¶15-17) does not establish NovaCloud had "an intent to enforce [its] patents against [SAP]." *Finisar Corp.*, 2021 WL 810227 at \*5. To the extent SAP has "[f]ear of a future infringement suit," that fear "is insufficient to confer jurisdiction." *Allied Mineral Prods., Inc.,* 870 F.3d at 1341; *Prasco LLC,* 537 F.3d at 1338 (rejecting a claim for declaratory judgment where the plaintiff argued that it suffered actual harm when it merely feared a future infringement suit).

**B.    SAP's Jurisdictional Claim is Belied By Its Arbitrary Selection of Twenty-One Patents From NovaCloud's Portfolio**

SAP bases subject matter jurisdiction on NovaCloud's outreach notifying SAP of NovaCloud's portfolio of 57 patents, but SAP seeks declaratory relief on twenty-one of those patents. *See generally,* Compl. Why those twenty-one patents and not all 57? SAP doesn't say. But

-12-

SAP's self-selection is problematic because NovaCloud did not identify those 21 patents—or any other specific patents—to SAP. Compl. Ex. V ("Our website has some additional information https://www.novacloudllc.com/ and you can access all of our publicly recorded US assignments through this USPTO link UNDERLINE HERE (57 total)."); *Applera Corp. v. Mich. Diagnostics LLC*, 594 F. Supp. 2d 150, 160 (D. Mass. 2009) (declining to extend jurisdiction where the plaintiff sought declaratory judgment of non-infringement of the patent owner's 62-patent portfolio, which the patent owner had generally referred to while claiming infringement on only seven of its patents.); *cf. Microsoft Corp. v. Phoenix Sols. Inc.,* 741 F. Supp. 2d 1156, 1162 (C.D. Cal. 2010) (finding that jurisdiction existed as to all fifteen patents, despite only having presented claim charts for nine patents, because prior communications had specifically identified all fifteen patents.). NovaCloud identified only its overall portfolio, not any specific patents, let alone the twenty-one particular patents selected by SAP. *Id.*

As detailed above, NovaCloud did not communicate an intent to enforce any of its patents against SAP. But it is doubly clear that NovaCloud did not communicate an intent to enforce the twenty-one patents for which SAP seeks relief. SAP's self-selection cannot fill the hole left by NovaCloud not identifying specific patents or making any assertion or allegation (or even suggestion) of infringement of any particular patent by any particular SAP product. *See Dental Monitoring SAS v. Align Tech., Inc.*, No. C 22-07335 WHA, 2023 WL 4297570, at *6 (N.D. Cal. Jun. 30, 2023) ("[K]nowledge of the existence of a patent portfolio does not confer knowledge of individual patents or claims in that portfolio, let alone knowledge of their infringement."); *see also Applera Corp.*, 594 F. Supp. 2d at 160.

SAP's efforts to manufacture a justifiable controversy by unilaterally cherry-picking patents that were never placed at issue fails to establish subject matter jurisdiction and warrants dismissal.

-13-

Defendant's Notice of Motion and Motion to Dismiss                                      Case No. 3:25-cv-08118-JD

McKool Smith, P.C.

### C.    Routine Licensing Efforts Promote Judicial Efficiency

The Declaratory Judgment Act is designed to adjudicate real and immediate disputes—not to weaponize standard, good-faith licensing communications or create an opportunity for a potential licensee to run to the courts rather than negotiate in good faith. *See* 28 U.S.C. § 2201(a). Treating requests for confidential licensing discussions as a basis for subject matter jurisdiction is contrary to good public policy.

Parties are (and should be) encouraged to resolve issues outside of the courtroom. The Federal Circuit has emphasized the importance of "promoting extrajudicial dispute resolution, [as well as] sound judicial administration and the conservation of judicial resources." *Comm'ns Test Design, Inc. v. Contec LLC*, 952 F.3d 1356, 1365 (Fed. Cir. 2020) (internal quotations omitted). Due to the non-public nature of the information necessary for productive licensing discussions, it is routine practice for a patent holder to request confidentiality to engage in such discussions. *E.g., Kannuu Pty. Ltd v. Samsung Elecs. Co. Ltd,* 15 F.4th 1101, 1107 (Fed. Cir. 2021); *SiOnyx LLC v. Hamamatsu Photonics K.K.,* 981 F.3d 1339, 1343 (Fed. Cir. 2020).[3] If a patent owner's request for an NDA to share claim charts were enough to create declaratory judgment jurisdiction, patent owners would avoid these discussions altogether and pursue litigation instead. Good faith licensing negotiations would cease to be an alternative to filing a lawsuit. NovaCloud's request to enter an NDA to have candid conversations about claim charts was to move negotiations forward. Treating an invitation to enter confidential licensing discussions as an affirmative act would undermine the Federal Circuit's encouragement of "promoting extrajudicial dispute resolution." *Comm'ns Test Design, Inc.*, 952 F.3d at 1360 (internal quotations omitted). Construing such requests as

---

[3] *See also* Jorge L. Contreras, *Confidentiality and Pre-license Negotiations. In: Intellectual Property Licensing and Transactions: Theory and Practice,* Cambridge Univ. Press (2022) (ebook) ("During the proposal and negotiation of a licensing or other business transaction, it is often the case that one or both parties will be required to disclose information to the other that is not generally known to the public.").

-14-

foundations for jurisdiction frustrates the purpose of using extrajudicial tools to minimize litigation and conserve judicial resources.

Courts have repeatedly denied jurisdiction where the patent owner's conduct amounted to typical licensing activity, such as sending non-threatening outreach communications, and lacked any affirmative acts directed at the plaintiff. *See, e.g., Cepheid*, 2013 WL 184125 at *10-13; *Innovative Therapies, Inc.*, 599 F.3d 1381 (agreeing with the district court that informal conversations made by employees of defendant without decision-making authority against a device that had not been seen and evaluated for infringement of any patent was not sufficient to confer declaratory jurisdiction.); *see also Prasco LLC,* 537 F.3d at 1340. Holding that invitations to enter confidential licensing discussions provide standing for declaratory judgment relief would deprive patent owners and potential licensees alike of the opportunity to assess risks and benefits through good-faith negotiation. Licensing discussions—and certainly invitations to begin licensing discussions—should be encouraged rather than punished by premature litigation.

## V.    CONCLUSION

SAP has not pled, and cannot plead, facts adequate to support this Court's exercise of subject matter jurisdiction for a declaratory judgment action pursuant to 28 U.S.C. § 2201(a). NovaCloud reached out to SAP in a good-faith attempt to begin licensing negotiations. NovaCloud provided no claim charts, no patent- or claim-specific allegations, and no infringement analysis of any stripe. NovaCloud did not accuse SAP of infringing a specific patent and did not even identify any specific patents within its portfolio. Nor did NovaCloud threaten litigation or press SAP to respond to its outreach or impose deadlines when SAP ignored it for months. The totality of these facts and circumstances do not amount to a justiciable case or controversy, and this Court should dismiss SAP's complaint without leave to amend.

McKool Smith, P.C.

-15-

DATED: December 5, 2025

Respectfully submitted,

MCKOOL SMITH, P.C.

By */s/ Alan P. Block*_____
Alan P. Block
California Bar No. 143783
ablock@mckoolsmith.com
MCKOOL SMITH P.C.
One California Plaza, Suite 2900
Los Angeles, CA 90071
Telephone: 213.694.1200
Facsimile: 213.694.1234

**Attorneys for Defendant
NOVACLOUD LICENSING, LLC**

McKool Smith, P.C.

-16-