VENABLE LLP
William A. Hector (SBN 298490)
   Email: wahector@Venable.com
101 California St., Suite 3800
San Francisco, CA 94111
Telephone: 415.653.3750
Facsimile: 415.653.3755

Frank C. Cimino, Jr. (*pro hac vice*)
   Email: fccimino@Venable.com
Megan S. Woodworth (*pro hac vice*)
   Email: mswoodworth@Venable.com
Jonathan L. Falkler (*pro hac vice*)
   Email: jlfalkler@Venable.com
600 Massachusetts Avenue, NW
Washington, DC  20001
Telephone: 202.344.4000

Robert E. Bugg (*pro hac vice*)
   Email: rebugg@Venable.com
151 West 42nd Street
New York, NY 10036
Telephone: 212.370.6241

*Attorneys for SAP America, Inc.*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| SAP AMERICA, INC.<br><br>              Plaintiff,<br><br>        v.<br><br>NOVACLOUD LICENSING, LLC<br><br>              Defendant. | Case No. 3:25-cv-08118-JD<br><br>**SAP AMERICA INC'S OPPOSITION TO NOVACLOUD LICENSING LLC'S MOTION TO DISMISS**<br><br>**JURY TRIAL DEMANDED**<br><br>Date: January 15, 2026<br>Time: 11 a.m.<br>Department: Courtroom 11, 19th Floor<br>Judge: Hon. James Donato<br><br>Complaint Filed: September 24, 2025<br>Trial Date: Not set |

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ................................................................................................ 1

II.   FACTUAL BACKGROUND ............................................................................... 2

III.  ARGUMENT ....................................................................................................... 5

      A.    SAP has Satisfied Article III's Case-Or-Controversy Requirement ................... 5

            1.    The Nature and Extent of the Parties' Communications
                  Demonstrate an Intent by NovaCloud to Enforce its Patents ................ 6

            2.    The Nature and Extent of Patent Infringement Analysis
                  Demonstrate an Intent by NovaCloud to Enforce its Patents ................ 8

            3.    History of Litigation and the Nature of the Patent Holder's
                  Business Demonstrate an Intent by NovaCloud to Enforce
                  its Patents ................................................................................... 12

      B.    Public Policy Supports Declaratory Judgment Jurisdiction ............................. 14

IV.   CONCLUSION ................................................................................................. 15

SAP'S OPPOSITION TO NOVACLOUD'S
                                                                                    MOTION TO DISMISS

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*3M Co. v. Avery Dennison Corp.*,
673 F.3d 1372 (Fed. Cir. 2012).............................................................................7, 8, 10, 11, 12

*ABB Inc. v. Cooper Indus., LLC*,
635 F.3d 1345 (Fed. Cir. 2011)...............................................................................................7

*ActiveVideo Networks, Inc. v. Trans Video Elecs., Ltd.*,
975 F. Supp. 2d 1083 (N.D. Cal. 2013) ...................................................................................8

*Apple Inc. v. Telefonaktiebolaget LM Ericsson, Inc.*,
No. 15-CV-00154-JD, 2015 WL 1802467 (N.D. Cal. Apr. 20, 2015) .......................................9

*Apple Inc. v. Wi-LAN Inc.*,
No. 14-CV-2838-CW, 2014 WL 4477362 (N.D. Cal. Sept. 11, 2014) ...................................12

*Arris Grp., Inc. v. British Telecomms. PLC*,
639 F.3d 1368 (Fed. Cir. 2011).........................................................................................1, 5

*Arrowhead Indus. Water, Inc. v. Ecolochem, Inc.*,
846 F.2d 731 (Fed. Cir. 1988)...............................................................................................15

*Ass'n for Molecular Pathology v. U.S. Pat. & Trademark Off.*,
689 F.3d 1303 (Fed. Cir. 2012).......................................................................................5, 7, 12

*Danisco U.S. Inc. v. Novozymes A/S*,
744 F.3d 1325 (Fed. Cir. 2014)..............................................................................................15

*Ebates Performance Mktg., Inc. v. MyMail, Ltd.*,
No. 20-CV-4768-LHK, 2021 WL 121130 (N.D. Cal. Jan. 13, 2021) ....................................13

*Goodyear Tire & Rubber Co. v. Releasomers, Inc.*,
824 F.2d 953 (Fed. Cir. 1987)................................................................................................14

*Hewlett-Packard Co. v. Acceleron LLC*,
587 F.3d 1358 (Fed. Cir. 2009)...................................................................................... *passim*

*Hulu LLC v. Rovi Corp.*,
No. 17-CV-02942-JD, 2017 WL 3535031 (N.D. Cal. Aug. 16, 2017)...............................7, 13

*Indect USA Corp. v. Park Assist, LLC*,
No. 3:18-CV-02409-BEN-MDD, 2019 WL 3780274 (S.D. Cal. Aug. 12,
2019) .......................................................................................................................................8

iii

*Intel Corp. v. Tela Innovations, Inc.*,
No. 3:18-CV-02848-WHO, 2018 WL 4859314 (N.D. Cal. Oct. 5, 2018) ...............................8

*Juniper Networks Inc. v. Swarm Tech. LLC*,
No. 3:20-CV-03137-JD, 2021 WL 6049924 (N.D. Cal. Dec. 21, 2021)..................................8

*Medimmune, Inc. v. Genentech, Inc.*,
549 U.S. 118 (2007).......................................................................................2, 5, 7, 15

*Micron Tech., Inc. v. Mosaid Techs., Inc.*,
518 F.3d 897 (Fed. Cir. 2008)...................................................................................5, 10

*Minn. Mining & Mfg. Co. v. Norton Co.*,
929 F.2d 670 (Fed. Cir. 1991)........................................................................................14

*Prasco, LLC v. Medicis Pharm. Corp.*,
537 F.3d 1329 (Fed. Cir. 2008)................................................................................13, 15

*Renaissance Learning, Inc. v. Walker Digital, LLC*,
No. 3:11-CV-166-SLC, Dkt. No. 6 (W.D. Wis. Mar. 15, 2011) ..........................10, 11, 12, 15

*Societe de Conditionnement en Aluminium v. Hunter Eng'g Co.*,
655 F.2d 938 (9th Cir. 1981) .....................................................................................1, 15

*The Neiman Marcus Group, Inc. v. Doe No. 1*,
No. 3:13-cv-01651, Dkt. No. 12 (N.D. Tex. June 12, 2013) ............................................10, 11

*Twitter, Inc. v. VoIP-Pal.com, Inc.*,
No. 3:21-CV-9773-JD, 2022 WL 2905065 (N.D. Cal. July 22, 2022)................................8, 13

*Unisense Fertilitech A/S v. Auxogyn, Inc.*,
896 F. Supp. 2d 822 (N.D. Cal. 2012) ..............................................................................11

SAP'S OPPOSITION TO NOVACLOUD'S
MOTION TO DISMISS

## I. INTRODUCTION

SAP seeks a judicial declaration that its products do not infringe NovaCloud's patents. A live, ongoing controversy exists: NovaCloud, a company whose "sole purpose" is licensing its patents, contacted SAP alleging that SAP's products use those patents, and requesting that SAP enter into "good faith discussions toward a license." Compl. Ex. V at 2-3. NovaCloud already had sued one party, and while communicating with SAP, it sued another. NovaCloud's overtures are not, as NovaCloud suggests, mere "preliminary discussions" about unspecified patents and unidentified products. To the contrary, NovaCloud had already analyzed SAP's products, developed infringement theories, claim charts, and damages analysis, and made a specific monetary demand. It offered to provide more information and claim charts—but only if SAP agreed to waive its right to declaratory judgment. NovaCloud's Motion presents a narrative that contradicts the clear purpose of its conduct—to pressure SAP into taking a license based on a threat of impending litigation in a forum of NovaCloud's choosing.

Congress enacted the Declaratory Judgment Act to protect parties like SAP when an accuser is wielding litigation as a negotiation tool. The Act "was designed to relieve potential defendants from the Damoclean threat of impending litigation which a harassing adversary might brandish, while initiating suit at his leisure or never." *Societe de Conditionnement en Aluminium v. Hunter Eng'g Co.*, 655 F.2d 938, 943 (9th Cir. 1981). NovaCloud contends there is no declaratory-judgment jurisdiction because it did not "threaten litigation" against SAP since it used the word "relevant" rather than "infringing;" and couched its approach as a "offer" to enter into "good faith discussions toward a license to the portfolio." Motion at 2, 6-7. But it is well-recognized that the Declaratory Judgment Act's purpose would be ill-served if a patent owner could avoid suit by carefully tailoring the messaging to avoid using "magic words." *See Arris Grp., Inc. v. British Telecomms. PLC*, 639 F.3d 1368, 1379 (Fed. Cir. 2011) (quoting *Hewlett-Packard Co. v. Acceleron LLC*, 587 F.3d 1358, 1362 (Fed. Cir. 2009)). Indeed, the Federal Circuit has made clear, in the seminal post-*Medimmune* case, that conduct like NovaCloud's establishes declaratory judgment jurisdiction, despite no "explicit[] alleg[ation of] infringement":

VENABLE LLP
101 CALIFORNIA STREET, SUITE 3800
SAN FRANCISCO, CA 94111
415.653.3750

> The purpose of a declaratory judgment action cannot be defeated simply by the stratagem of a correspondence that avoids the magic words such as "litigation" or "infringement." Of course, if "a party has actually been charged with infringement of the patent, there is, *necessarily*, a case or controversy adequate to support [declaratory judgment] jurisdiction." *Cardinal Chem. Co. v. Morton Int'l*, 508 U.S. 83, 96, 113 S.Ct. 1967, 124 L.Ed.2d 1 (1993). But it is implausible (especially after *MedImmune* and several post *MedImmune* decisions from this court) to expect that a competent lawyer drafting such correspondence for a patent owner would identify specific claims, present claim charts, and explicitly allege infringement.

*Hewlett-Packard*, 587 F.3d at 1362. The Federal Circuit went so far as to find it "implausible . . . to expect that a competent lawyer" would make the statements and showings that NovaCloud argues is necessary for jurisdiction. Instead, the Federal Circuit overturned the district court and found declaratory judgment jurisdiction was proper when (1) a patent licensing entity (2) made an "implied" assertion of rights by saying its patents were "relevant to" the party's product lines, and (3) asked the party to agree not to file a declaratory judgment suit to obtain more information. 587 F.3d at 1360-61, 1364. At least that same conduct is present here from NovaCloud. Based on *Hewlett-Packard* and that conduct alone, NovaCloud's motion must be denied.

The dispute here is "definite and concrete" and "real and substantial." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007). There is a "substantial controversy" that is of "sufficient immediacy and reality" to warrant declaratory judgment. *Id.*

## II.    FACTUAL BACKGROUND

NovaCloud's assertion that it has engaged only in "introductory communications" with SAP, and has never identified "any particular patents" or "any particular SAP product or service" (Motion at 2, 4) is illusory. NovaCloud contacted SAP at least seven times to secure a license to the Asserted Patents. NovaCloud first approached SAP on March 19, 2025, in an email from Bryan Yearwood to Anthony DiBartolomeo, SAP's Chief IP Officer. Compl. Ex. V. In that email, Mr. Yearwood explained that he represented NovaCloud Licensing, a company created for the "sole purpose" of "licens[ing] a foundational patent portfolio of cloud-based technologies from Ericsson." *Id*. (emphasis added).

NovaCloud alleged that "the patented technologies included in [its] portfolio are found in IaaS and PaaS cloud and data center infrastructure and service offerings, including network

2

reliability and QoS, network traffic management and network security, load balancing, auto-scaling, virtualization, resource management, and video streaming;" and that the patented technologies "*are core and ubiquitous to cloud computing platforms and services*[.]" *Id.* (emphasis added).  It represented that "[NovaCloud's] *analysis indicates that many of [its] patents are relevant to SAP's product offerings including its cloud computing and Business Technology Platform services*." *Id.* (emphasis added).

NovaCloud again contacted SAP on April 28, 2025, this time by email (also sent via FedEx) to Mary Hanss, SAP's General Counsel.  *Id.*  Mr. Yearwood included the prior email, stating that he had not received a response and that "this is an important issue." *Id.*  He offered to "engage in good faith licensing discussions with SAP for the NovaCloud patents," again representing that the patent portfolio was relevant to SAP's cloud computing platform and Business Technology Platform services.  *Id.*

On June 26, 2025, NovaCloud escalated its efforts by having its outside litigation counsel, John Campbell of McKool Smith,[1] write Mary Hanss.  Compl. Ex. W.  In that letter, NovaCloud again offered a license to its patent portfolio, and again asserted that the portfolio was relevant to SAP's cloud computing platform and Business Technology Platform services.  *Id.*  Mr. Campbell stated that he was "prepared to present important background information" regarding NovaCloud's portfolio and offered to travel to SAP's offices for a meeting.  *Id.*

In August 2025, SAP engaged in multiple discussions with NovaCloud by phone, video conference, and email.  During those discussions, NovaCloud provided additional information regarding its patent portfolio and its relevance to SAP's products, and proposed a specific sum of money.  Compl. ¶ 12.  In particular, NovaCloud:

1) Demonstrated knowledge of SAP's products and presented evidence of their infringement analysis, including mappings of discrete NovaCloud patent family groupings to

---

[1] Mr. Campbell and McKool Smith serve as NovaCloud's litigation counsel in this case, and in its district court actions against Meta, IBM, and Amazon.  Ex. A; Compl. ¶¶ 16-17.  On December 17, NovaCloud sued Microsoft Corporation in the Eastern District of Texas.

Case No. 3:25-cv-08118-JD

SAP'S OPPOSITION TO NOVACLOUD'S
MOTION TO DISMISS

specific SAP products, including SAP Business Technology Platform, SAP HANA, SAP Integration Suite, SAP Data Intelligence, SAP on VMWare, SAP Access Control, SAP Data Hub, SAP SuccessFactors, SAP Cloud ALM, and SAP NetWeaver Application Server. Complaint ¶ 19; Ex. A at 6-7.

2) Informed SAP that the patents it was asserting against Meta and IBM—including nine of the Asserted Patents—were also "relevant" to SAP's products.  Compl. ¶¶ 15–18.

3) Explained that it had performed a "preliminary damages analysis" with well-known plaintiff-side damages expert Jim Bergman, which could be developed into an "expert report," and provided an "Implicated Product Revenue Breakdown (Preliminary)."  Ex. A at 10-12.[2]  In addition to Mr. Bergman (who was a damages expert witness against SAP in a then-pending patent case), McKool Smith, NovaCloud's litigation counsel, also appears on NovaCloud's damages presentation slide.  *Id*.

4) Promised to provide claim charts after SAP executed an NDA whose terms expressly prohibited SAP from seeking declaratory judgment.  Compl. ¶ 13.

When SAP proposed minor revisions to the NDA that mainly sought to remove the one-way provision restricting declaratory-judgment jurisdiction—to maintain both parties on equal venue footing—NovaCloud refused and stated that the "intent of the NDA is to prevent SAP from filing a declaratory judgment action with respect to its patents[.]"  Compl. ¶ 14.

At that point, it became clear that NovaCloud would not accept SAP's counter-proposed NDA terms and would insist that SAP gives up its right to a declaratory judgment action. Knowing that NovaCloud had sued two other parties based on similar allegations that its patents covered "core" features of cloud computing, SAP filed its Complaint for declaratory judgment.

---

[2] Mr. Bergman's bio from his website shows he focuses on litigation (not licensing) and touts a string of large plaintiff-side damages awards: "Mr. Bergman specializes in intellectual property, commercial, and bankruptcy litigation.  He has served as a testifying or consulting expert in complex business litigation, patent and technology, trade secrets, trademarks, securities litigation, business valuation, bankruptcy reorganization, solvency, and general damages related matters.  He has testified more than 25 times in federal court and arbitration proceedings, obtaining jury verdicts totaling over $2.8 billion in damages."  Ex. A.

Case No. 3:25-cv-08118-JD                    SAP'S OPPOSITION TO NOVACLOUD'S
                                             MOTION TO DISMISS

Without filing suit, SAP would have had to operate under growing potential liability for patent infringement and risk of litigation by NovaCloud at the place of its choosing.

## III.     ARGUMENT

The case-or-controversy requirement of Article III of the Constitution is met when "the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Medimmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (quotation marks omitted). In patent disputes, an actual controversy requires "an injury in fact traceable to the patentee," which exists if the plaintiff has alleged "(1) an affirmative act by the patentee related to the enforcement of his patent rights and (2) meaningful preparation to conduct potentially infringing activity." *Ass'n for Molecular Pathology v. U.S. Pat. & Trademark Off.*, 689 F.3d 1303, 1318 (Fed. Cir. 2012). Here, both factors are met, and the second factor is undisputed because SAP already makes and sells the products accused of infringement.

As the Federal Circuit has recognized, *MedImmune*'s "all the circumstances" standard is "more lenient" than the prior "reasonable apprehension" test and thus "enhances the availability of declaratory judgment jurisdiction in patent cases." *Micron Tech., Inc. v. Mosaid Techs., Inc.*, 518 F.3d 897, 902 (Fed. Cir. 2008). Whether an "actual controversy" exists turns on the totality of the patent owner's conduct, and "conduct that can be *reasonably inferred* as demonstrating intent to enforce a patent" is sufficient to establish jurisdiction. *Hewlett–Packard,* 587 F.3d at 1363 (emphasis added). "Magic words such as 'litigation' or 'infringement'" are not required, and a patentee cannot evade jurisdiction simply by denying that it has accused the declaratory-judgment plaintiff of infringement when the surrounding facts demonstrate an intent to enforce its patents. *See, e.g., Arris Grp.*, 639 F.3d at 1379; *SanDisk*, 480 F.3d at 1381–83.

### A.  SAP has Satisfied Article III's Case-Or-Controversy Requirement

In *Cepheid v. Roche Molecular Systems*, a court in this District analyzed precedent and recognized thirteen factors that may support declaratory-judgment jurisdiction in patent cases.

5

No. 12-CV-4411- EMC, 2013 WL 184125, at *6 (N.D. Cal. Jan. 17, 2013).[3]  These factors can be organized into three broader categories, discussed below.

      1.  <u>The Nature and Extent of the Parties' Communications Demonstrate an Intent by NovaCloud to Enforce its Patents</u>

The nature and extent of the parties' communications are relevant considerations under *Cepheid*, including: (1) the strength of any threatening language in communications between the parties; (2) whether the patent holder imposed a deadline to respond; (3) the number of times the patent holder has contacted the alleged infringer; (4) the length of time transpired after the patent holder asserts infringement; (5) whether communications initiated by the declaratory judgment plaintiff have the appearance of an attempt to create a controversy in anticipation of filing suit; (6) whether the patent holder's threats have induced the alleged infringer to change its behavior; and (7) whether the patentee refused to give assurance it will not enforce its patent.  *Cepheid*, 2013 WL 184125 at *6.

NovaCloud's repeated, ongoing, and recent communications—each tying its patents to SAP's products and coupling that assertion with a demand for a large paid license—create a substantial, live controversy.

As discussed above, between March and August 2025, NovaCloud contacted SAP several times to secure a license.  It directed correspondence to SAP's Chief IP Officer, Anthony DiBartolomeo, and then to SAP's General Counsel, Mary Hanss.  Then, NovaCloud escalated its efforts by having its litigation firm contact SAP.  In each of these communications, NovaCloud asserted that its patents were relevant to SAP's products and offered a license to its portfolio.

In August 2025, NovaCloud then engaged in a series of calls, video conferences, and

---

[3] *Cepheid's* holding denying DJ jurisdiction is not on point. In *Cepheid*, unlike here, Defendants' communications failed to identify any of Plaintiff's products that were allegedly covered by the asserted patent and were followed by correspondence from Plaintiff that "was contrived and initiated by the Plaintiff in contemplation of litigation." 2013 WL 184125, at *11. Defendants also had not "performed a detailed infringement analysis,"  were "not engaged in a larger pattern of litigation on the patent," and there was "no indication that Defendants intended to escalate the dispute."  *Id*.

6

emails with SAP during which it again pressed SAP to license its portfolio for a specific sum of money. NovaCloud gave a presentation that mapped discrete families of its patents each to particular SAP products, represented that the patents already asserted against Meta and IBM were likewise "relevant" to SAP's offerings, and explained its "preliminary damages analysis" for the SAP products. Ex. A; Compl. ¶ 18. NovaCloud offered claim charts, but only if SAP agreed to give up its right to file a declaratory judgment action. Compl. ¶ 14. NovaCloud's actions demonstrate intent to enforce its patents—NovaCloud's sole business was litigation and licensing, and it had already filed suit against two other cloud computing companies.

NovaCloud's efforts underscore the existence of a concrete, immediate dispute that is ripe for declaratory relief—the very type of controversy in which courts consistently find declaratory-judgment jurisdiction. In *MedImmune*, the Supreme Court held that jurisdiction existed where the patentee simply sent "a letter expressing its belief that [the plaintiff's product] was covered by the [asserted] patent and its expectation that petitioner would pay royalties." 549 U.S. at 121–22. Likewise, in *Association for Molecular Pathology*, the Federal Circuit upheld jurisdiction where the patentee sent a letter asserting the alleged infringer was either currently providing, or interested in providing, testing services covered by the patent and offered a license for a fee. 689 F.3d 1303, 1320 (Fed. Cir. 2012). And in *3M Co. v. Avery Dennison Corp.*, the Federal Circuit found an actual controversy where the patentee told the plaintiff that its product "may infringe" and that "licenses are available." 673 F.3d 1372, 1379 (Fed. Cir. 2012).

NovaCloud contends there is no case or controversy because it never issued an explicit "threat of litigation." Motion at 10. But the Federal Circuit has repeatedly rejected any such requirement. *See, e.g., ABB Inc. v. Cooper Indus., LLC*, 635 F.3d 1345, 1348 (Fed. Cir. 2011) ("a specific threat of infringement litigation by the patentee is not required to establish jurisdiction"). In *Hewlett–Packard*, the Federal Circuit explained that *MedImmune* "certainly" lowered the bar for declaratory-judgment jurisdiction "in the licensor–licensee context," and held that jurisdiction "cannot be defeated simply by the stratagem of a correspondence that avoids the magic words such as 'litigation' or 'infringement.'" 587 F.3d at 1361–63; *see also Hulu LLC v. Rovi Corp.*, No. 17-CV-02942-JD, 2017 WL 3535031, at *1 (N.D. Cal. Aug. 16, 2017) (denying

7

motion to dismiss DJ complaint where defendants "did not make any specific threat of litigation"); *Juniper Networks Inc. v. Swarm Tech. LLC*, No. 3:20-CV-03137-JD, 2021 WL 6049924, at *2 (N.D. Cal. Dec. 21, 2021) (same); *Twitter, Inc. v. VoIP-Pal.com, Inc.*, No. 3:21-CV-09773-JD, 2022 WL 2905065, at *2 (N.D. Cal. July 22, 2022) (same).  Indeed, not only is a threat not required for jurisdiction but, under *Hewlett–Packard,* neither is an explicit allegation of infringement.  587 F.3d at 1362.

NovaCloud likewise asserts that no case or controversy can exist because it never imposed a response deadline on SAP.  That argument also fails.  Courts have recognized that "the fact that the patentee does not impose a deadline to respond to its communication is not dispositive."  *ActiveVideo Networks, Inc. v. Trans Video Elecs., Ltd.*, 975 F. Supp. 2d 1083, 1088 (N.D. Cal. 2013) (citing *3M Co. v. Avery Dennison Corp.*, 673 F.3d 1372, 1380 (Fed. Cir. 2012) ("While a patentee's imposition of a deadline is a circumstance to consider . . . , declaratory judgment jurisdiction existed in cases in which the patentee's communications did not impose strict deadlines.")); *see also Intel Corp. v. Tela Innovations, Inc.*, No. 3:18-CV-02848-WHO, 2018 WL 4859314, at *4 (N.D. Cal. Oct. 5, 2018) (finding declaratory-judgment jurisdiction despite the patentee "never impos[ing] a deadline on [plaintiff] and … no history of litigation between the parties"); *Indect USA Corp. v. Park Assist, LLC*, No. 3:18-CV-02409-BEN-MDD, 2019 WL 3780274, at *6 (S.D. Cal. Aug. 12, 2019) ("the fact that Park Assist did not demand a response is not fatal to this Court's jurisdiction.").  And NovaCloud's suggestion that it never "pressed SAP for a response" (Motion at 4) is demonstrably incorrect.  Following its initial outreach in March 2025, NovaCloud repeatedly followed up with SAP seeking licensing fees for its portfolio, as detailed above.

    2.   <u>The Nature and Extent of Patent Infringement Analysis Demonstrate an Intent by NovaCloud to Enforce its Patents</u>

The nature and extent of the patentee's patent infringement analysis are key considerations under *Cepheid*, including: (1) the depth and extent of infringement analysis conducted by the patent holder; (2) whether the patent holder has identified a specific patent and specific infringing products; and (3) the extent of the patent holder's familiarity with the product

8

prior to the suit. *Cepheid*, 2013 WL 184125 at *6.

NovaCloud's extensive familiarity with SAP's products, its detailed infringement analysis, and its identification of specific patents and products strongly support declaratory-judgment jurisdiction. With respect to SAP's products, NovaCloud's March 19, 2025 email and its April 28, 2025 and June 26, 2025 letters expressly identified its patent portfolio as "relevant" to SAP's "Business Technology Platform and cloud computing services." Compl. Exs. V, W. Then, in August 2025, SAP and NovaCloud engaged in multiple discussions during which NovaCloud provided additional detail regarding its portfolio and its alleged applicability to the specific SAP products at issue in this case. Compl. ¶ 12.

With respect to NovaCloud's patents, NovaCloud informed SAP that it asserted nine of the Asserted Patents against Meta and IBM—other companies that engage in cloud computing like SAP—and that those nine patents also are "relevant" to SAP's products. Compl. ¶¶ 16–18.

During a videoconference, NovaCloud presented information to SAP mapping 17 NovaCloud patent families (identified by descriptions that could be matched to their patents) to specific SAP products. Ex. A at 6-7. These were the same technologies NovaCloud highlighted in its correspondence with SAP— "IaaS and PaaS cloud and data center infrastructure and service offerings, including network reliability and QoS, network traffic management and network security, load balancing, auto-scaling, virtualization, resource management, and video streaming." *See, e.g.*, Compl. Exs. V, W. NovaCloud's assertion that SAP "arbitrarily" or "mysteriously" selected the 21 patents and corresponding products is unfounded—SAP selected the patents and products that it understood were the focus of NovaCloud's presentation, and were consistent with the technology areas identified in the prior communications.

Under the law, NovaCloud's communications did not need to enumerate specific patent numbers to establish declaratory-judgment jurisdiction. Courts have held that a patentee's demands directed to a portfolio of patents are sufficient to support jurisdiction as to patents within that portfolio, considering the context of the parties' discussions and the patentee's enforcement conduct against competitors. *See Apple Inc. v. Telefonaktiebolaget LM Ericsson, Inc.*, No. 15-CV-154-JD, 2015 WL 1802467, at *1 (N.D. Cal. Apr. 20, 2015) (allowing a

9

SAP'S OPPOSITION TO NOVACLOUD'S
MOTION TO DISMISS

declaration of noninfringement as to a subset of patents where communications sought a license to the patentee's entire portfolio); *Micron Tech., Inc. v. Mosaid Techs., Inc.*, 518 F.3d 897, 900 (Fed. Cir. 2008) (same).[4]

NovaCloud's contention that there are "no claim charts" and "no infringement analysis" (Motion at 3, 9) is equally incorrect. NovaCloud's correspondence stated that its "*analysis indicates*" its patents are relevant to SAP's products—the only relevant "analysis" in this instance *is* an infringement analysis. Compl. Ex. V. And when NovaCloud presented NovaCloud patent families mapped to specific SAP products, it promised formal claim charts once SAP executed an NDA. All of this supports declaratory-judgment jurisdiction. *See, e.g., 3M Co. v. Avery Dennison Corp.*, 673 F.3d 1372, 1380 (Fed. Cir. 2012) (patentee's indication that it had analyzed plaintiff's product and would send claim charts "signaled its intent to escalate the dispute"). NovaCloud withheld specific patent numbers and claim charts unless SAP would agree not to seek declaratory relief—an attempt to manufacture "prematurity" and avoid declaratory-judgment jurisdiction even though the infringement analysis had already been performed and the controversy was real.

Courts have recognized—and rejected—gamesmanship by patentees attempting to shield their conduct from declaratory relief, including where the patentee concealed not only the relevant patent numbers but even its own identity. In *Renaissance Learning, Inc. v. Doe No. 1*, the court upheld declaratory-judgment jurisdiction against an unknown entity seeking licensing fees for unidentified patents and permitted immediate discovery to identify both the patentee and the patents at issue. 2011 WL 5983299, at *4 (W.D. Wis. Nov. 29, 2011); *see also Renaissance*

---

[4] The *Applera* decision from the District of Massachusetts is inapposite. There, the court declined to exercise jurisdiction where "the correspondence between the parties itself bespeaks the lack of any specific dispute." 594 F. Supp. 2d 150, 160 (D. Mass. 2009). Here, by contrast, NovaCloud expressly tied each of the Asserted Patents to SAP—by identifying them as "core and ubiquitous to cloud computing platforms and services" provided by SAP, or by tying families of patents to specific SAP products. *See* Compl. Exs. V, W; Ex. A. *Dental Care* is likewise irrelevant. It addresses the knowledge requirement for willful infringement, not the existence of a justiciable controversy for purposes of declaratory judgment. *See* 2023 WL 4297570, at *6 (N.D. Cal. June 30, 2023).

SAP'S OPPOSITION TO NOVACLOUD'S
MOTION TO DISMISS

*Learning, Inc. v. Walker Digital, LLC*, No. 3:11-CV-166-SLC, Dkt. No. 6 (W.D. Wis. Mar. 15, 2011) (granting motion for leave to take immediate discovery); *The Neiman Marcus Group, Inc. v. Doe No. 1*, No. 3:13-cv-01651, Dkt. No. 12 (N.D. Tex. June 12, 2013) (same for similar case in N.D. Texas). As that court explained:

> [Patent Holder's] actions reasonably can be viewed as components of a strategy to preclude [DJ Plaintiff] from obtaining the facts it needed to file a declaratory judgment action; from this approach one also could reasonably infer that [DJ Defendant] already was prepared to litigate if necessary and intended to retain for itself the choices of when and where to file its lawsuit if [DJ Plaintiff] would not play ball. Then there is demand for a one-sided forbearance agreement that required that [DJ Plaintiff] not file suit but imposed no reciprocal obligation on [DJ Defendant]. All of this reasonably implies that [DJ Defendant] intends to enforce a patent and that a real controversy exists.

*Renaissance Learning*, 2011 WL 5983299, at *11. The same facts are present here, including NovaCloud's "demand for a one-sided forbearance agreement." *Id*.

NovaCloud cites *Unisense* to suggest that it is not enough to merely identify patents of interest.  But in that case, unlike this one, no "specific instances of potentially infringing activity or concrete steps towards potentially infringing activity ha[d] been identified and no product ha[d] been accused of necessarily infringing on the [asserted patent]."  *Unisense Fertilitech A/S v. Auxogyn, Inc.*, 896 F. Supp. 2d 822, 830 (N.D. Cal. 2012).  Here, NovaCloud has asserted its patents to be "*core and ubiquitous* to cloud computing platforms and services" and identified specific SAP "cloud computing" products relevant to this assertion—in doing so it identified products it believed necessarily infringed those "core and ubiquitous" patents.  Compl. Ex. V (emphasis added); Ex. A at 6-7.

NovaCloud also cites *3M*'s statement that "more is required than a communication from a patent owner to another party, merely identifying its patent and the other party's product line." 673 F.3d at 1378-79.  But the *3M* court went on to note that "how much more is required is determined on a case-by-case analysis" and specifically explained that:

> In *Hewlett–Packard*, for example, we concluded that a case or controversy existed based upon the patentee's letters to the declaratory judgment plaintiff that identified the patent as "*relat[ing]*" to a specific product line, imposed two-week deadlines to respond, and *insisted that the declaratory judgment plaintiff not file suit*.

11

*Id.* at 1379 (citing *Hewlett-Packard,* 587 F.3d at 1362-63) (emphasis added). "More" exists here as well—NovaCloud identified specific product lines as "relevant" to the patents and insisted SAP waive its right to file suit. The *3M* court also ultimately found jurisdiction on similar facts—noting that the patent holder's use of "may infringe" instead of "does infringe" was immaterial where, as here, the patent holder represented it had analyzed the accused products and claim charts would be forthcoming. *Id*.

      3.   <u>History of Litigation and the Nature of the Patent Holder's Business Demonstrate an Intent by NovaCloud to Enforce its Patents</u>

Under *Cepheid*, the parties' litigation history and the nature of the patent holder's business are also important considerations, including: (1) any prior litigation between the parties; (2) the patent holder's history of enforcing the patents-in-suit; and (3) whether the patent holder is simply a holding company with no sources of income other than enforcing patent rights. *Cepheid*, 2013 WL 184125 at *6.

NovaCloud's conduct toward SAP is especially telling given its business model. NovaCloud is an admitted non-practicing entity whose "*sole purpose*" is to license its patent portfolio. Compl. Exs. V, W (emphasis added). The Federal Circuit has recognized that "the receipt of [] correspondence from a non-competitor patent holding company . . . may invoke a different reaction than would a meet-and-discuss inquiry by a competitor, presumably with intellectual property of its own to place on the bargaining table." *Hewlett–Packard,* 587 F.3d at 1358 (Fed. Cir. 2009); *see also Renaissance Learning*, 2011 WL 5983299, at *4 (letters from a non-practicing entity indicative of a willingness to litigate).

NovaCloud has also shown that it has both the resources and the will to sue to monetize its portfolio. It has asserted its patents against others, including Meta, IBM, and more recently Amazon and Microsoft. Courts consistently hold that a "patentee's history of litigation with other parties is an appropriate factor for courts to consider in determining whether subject matter jurisdiction exists under the Declaratory Judgment Act." *Apple Inc. v. Wi-LAN Inc.*, No. 14-CV-2838-CW, 2014 WL 4477362, at *2 (N.D. Cal. Sept. 11, 2014) (citation omitted); *see also Ass'n for Molecular Pathology v. U.S. Patent & Trademark Office*, 689 F.3d 1303, 1323–24 (Fed. Cir.

12

2012) (considering patentee's enforcement against similarly situated parties as supporting DJ jurisdiction); *Prasco, LLC v. Medicis Pharm. Corp.*, 537 F.3d 1329, 1341 (Fed. Cir. 2008) ("prior litigious conduct" against others is relevant to whether an actual controversy exists); *Ebates Performance Mktg., Inc. v. MyMail, Ltd.*, No. 20-CV-4768-LHK, 2021 WL 121130, at *7 (N.D. Cal. Jan. 13, 2021) (weighing that defendant "has a history of enforcing the patents at issue" and "extensive litigation of its patent portfolio"); *Hulu LLC v. Rovi Corp.*, 2017 WL 3535031, at *1 (N.D. Cal. Aug. 16, 2017) (denying motion to dismiss DJ complaint where defendants were "highly active in their patent litigation activities including with [plaintiff's] competitors"); *Twitter, Inc. v. VoIP-Pal.com, Inc.*, 2022 WL 2905065, at *2 (N.D. Cal. July 22, 2022) (considering suits against plaintiff's competitors in assessing intent to enforce).

The third-party litigation cases cited by NovaCloud (Motion at 11–12) actually support SAP. In *Innovative Therapies, Inc. v. Kinetic Concepts, Inc*., the Federal Circuit recognized that "prior litigation is a circumstance to be considered in assessing the totality of circumstances," and declined jurisdiction only because of the "absence of *any act* directed toward" the DJ plaintiff. 599 F.3d 1377, 1382 (Fed. Cir. 2010) (emphasis added). Similarly, the *Prasco* court reiterated that "prior litigious conduct is one circumstance to be considered in assessing whether the totality of circumstances creates an actual controversy," but found no jurisdiction because "the defendants have not accused [plaintiff] of infringement . . . *nor have they taken any actions which imply such claims*." 537 F.3d at 1341 (emphasis added). In these cases, the courts found no declaratory-judgment jurisdiction because the patent holders had not even approached the plaintiff. Here, by contrast, NovaCloud has repeatedly directed its enforcement efforts squarely at SAP, while pursuing an extensive litigation campaign on those same patents.[5]

NovaCloud's pedigree further underscores its intent to litigate. It was founded by Joe Chernesky, founder and CEO of VideoLabs, Inc., and Bill Goldman, VideoLabs' EVP of IP

---

[5] The *Finisar* and *Red Hat* decisions on which NovaCloud relies are likewise inapposite. In both cases—unlike here—the patentee had no communications with the declaratory-judgment plaintiff and took no affirmative enforcement action of any kind directed at that party.

Strategy. Ex. B. VideoLabs is a well-known patent-licensing entity with a history of patent litigation, having brought more than twenty patent infringement actions in the district courts and before the ITC since 2021. Ex. C. The fact that experienced patent-litigation professionals formed NovaCloud in 2024 for the sole purpose of monetizing its patent portfolio—and have already sued four other cloud computing companies—confirms that, absent SAP's declaratory-judgment action, litigation would have been brought against SAP unless it agreed to a large license fee.

### B. Public Policy Supports Declaratory Judgment Jurisdiction

NovaCloud acknowledges that "the Declaratory Judgment Act is designed to adjudicate real and immediate disputes." Motion at 14. That is what exists here. The Supreme Court, the Federal Circuit, and courts in this District have all found declaratory-judgment jurisdiction proper in circumstances materially indistinguishable from those between NovaCloud and SAP.

The Declaratory Judgment Act was also enacted "to prevent avoidable damages from being incurred by a person uncertain of his rights and threatened with damage by delayed adjudication." *Minn. Mining & Mfg. Co. v. Norton Co.*, 929 F.2d 670, 673 (Fed. Cir. 1991); *see also Goodyear Tire & Rubber Co. v. Releasomers, Inc.*, 824 F.2d 953, 956 (Fed. Cir. 1987) ("the purpose of the Declaratory Judgment Act ... in patent cases is to provide the allegedly infringing party relief from uncertainty and delay regarding its legal rights."). NovaCloud labels its conduct "standard, good-faith licensing," but whatever the characterization, its approach is a thinly-veiled attempt to sidestep and undermine the Declaratory Judgment Act. As Chief Judge Markey of the Federal Circuit once explained, in describing "the sad and saddening scenario that led to enactment of the Declaratory Judgment Act":

> In the patent version of that scenario, a patent owner engages in a danse macabre, brandishing a Damoclean threat with a sheathed sword. Guerrilla-like, the patent owner attempts extra-judicial patent enforcement with scare-the-customer-and-run tactics that infect the competitive environment of the business community with uncertainty and insecurity. Before the Act, competitors victimized by that tactic were rendered helpless and immobile so long as the patent owner refused to grasp the nettle and sue. After the Act, those competitors were no longer restricted to an in terrorem choice between the incurrence of a growing potential liability for patent infringement and abandonment of their enterprises; they could clear the air by suing

14

for a judgment that would settle the conflict of interests.
*Arrowhead Indus. Water, Inc. v. Ecolochem, Inc.*, 846 F.2d 731, 734–35 (Fed. Cir. 1988) (citations omitted).

Here, NovaCloud has put SAP "in the position of either abandoning its [] products or running the risk of being sued for infringement"—precisely the situation described by Judge Markey the Declaratory Judgment Act was intended to remedy. *Danisco U.S. Inc. v. Novozymes A/S*, 744 F.3d 1325, 1332 (Fed. Cir. 2014), *citing MedImmune*, 549 U.S. at 129, 127 ("putting the challenger to the choice between abandoning his rights or risking prosecution [ ] is a dilemma that it was the very purpose of the Declaratory Judgment Act to ameliorate."). *Prasco*, on which NovaCloud relies, does not suggest otherwise. Of course, it would be bad policy to discourage negotiation by finding declaratory-judgment jurisdiction where a patentee has neither accused the declaratory plaintiff of infringement nor taken any action implying such a claim. 537 F.3d at 1341. As detailed above, that is not what happened here.

NovaCloud sought to obtain by contract what the law does not provide—the ability to make patent assertions "while initiating suit at [its] leisure or never." *See Societe de Conditionnement en Aluminium* 655 F.2d at 943 (9th Cir. 1981). This is conduct that "can be reasonably inferred as demonstrating intent to enforce a patent." *Hewlett–Packard,* 587 F.3d at 1363. To hold otherwise would only incentivize the kind of gamesmanship and "hiding the ball" by patentees that courts have criticized. *See Renaissance Learning*, 2011 WL 5983299, at *11.

## IV.   CONCLUSION

Taken together, these circumstances establish a substantial, immediate, and real controversy sufficient to support SAP's declaratory judgment claim of noninfringement. NovaCloud's Motion should therefore be denied in its entirety.

//

//

Dated: December 19, 2025

VENABLE LLP

By:    */s/ William A. Hector*
William A. Hector (SBN 298490)
Frank C. Cimino, Jr. (*pro hac vice*)
Megan S. Woodworth (*pro hac vice*)
Jonathan L. Falkler (*pro hac vice*)
Robert E. Bugg (*pro hac vice*)

*Attorneys for SAP America, Inc.*

16